JONES, Appellee,

v.

CONNEAUT CITY HEALTH DEPARTMENT, Appellant.

[Cite as *Jones v. Conneaut City Health Dept.*, 190 Ohio App.3d 28, 2010-Ohio-4560.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

Decided Sept. 24, 2010.

The Iarocci Law Firm, L.L.C., and Nicholas A. Iarocci, for appellee.

David A. Schroeder, Conneaut Law Director, and Luke P. Gallagher, Assistant Conneaut Law Director, and Lori B. Lamer, Ashtabula City Prosecutor, for appellant.

TIMOTHY P. CANNON, Judge.

{¶ 1} This is an accelerated-calendar case, submitted to this court on the record and the briefs of the parties. Appellant, Conneaut City Health Department, appeals from the judgment entered by the Ashtabula County Court of Common Pleas. The trial court granted a motion for summary judgment filed by appellee, Patricia Jones.

{¶ 2} In 1987, Jones began working as a registrar with the Health Department. She continued working in this capacity until October 2008. At all relevant times, Sally Kennedy served as the health commissioner of the Health Department. In addition to Jones and Kennedy, there were two full-time and two part-time employees of the Health Department.

{¶ 3} On Wednesday, October 1, 2008, a predisciplinary hearing was scheduled to discuss an incident in which Jones copied pages of another employee's personal desk calendar.

{¶ 4} On Monday, October 6, 2008, Jones left work at 1:00 p.m. and used 3.5 hours of compensation time for this absence. Jones was off work on October 7 and 8, 2008, and used sick time for this absence. Finally, Jones was not at work on October 9 and 10, 2008, and used personal time for this absence.

{¶ 5} Jones was treated by Dr. Thomas Hunt. In a letter dated October 9, 2008, Dr. Hunt indicated he was placing Jones on medical leave and that he "strongly advised" her to consider retiring from her position at the Health Department.

{¶ 6} On October 9, 2008, Jones placed a letter on Kennedy's desk indicating that she was retiring. In addition, the letter stated: "Due to medical reasons, I will be going on extended medical leave until my sick time is used and vacation time is also used. I am not asking for payout for my years of service." Apparently, the Health Department sought clarification of Jones's letter. In response, Jones's attorney sent a letter to the Health Department stating that Jones had resigned her position effective October 9, 2008. In addition, the letter stated:

{¶ 7} "[Jones] is willing to attempt resolution with the City to avoid lump sum payment which will place a significant burden on the general fund of the City of Conneaut. In lieu of payment by the City of Conneaut to me of 3,469.29 hours of accrued sick time and accrued vacation leave, [Jones] is willing to discuss with the Board of Health representatives and Finance Director John Williams, an extension of the October 9, 2008 retirement date to allow Mrs. Jones the ability to use all of such sick and vacation time while continuing to be paid and receive benefits."

{¶ 8} The city Board of Health, which governs the Health Department, had a meeting on October 8, 2008. At that meeting, the board voted to change the Health Department's personnel policy. The prior version of the personnel policy provided that employees would receive a lump-sum payment for all accrued but unused vacation hours upon separation. The personnel policy limited payout of accrued but unused sick time to 1,100 hours. However, the Board of Health revised the policy to limit the payout for vacation time to 80 hours. The revised policy kept the 1,100–hour limit for paid sick-leave hours. Both versions of the personnel policy provided that employees must provide a ten-day notice of resignation or he or she would lose his or her accumulated vacation leave.

{¶ 9} In December 2008, the Health Department paid Jones for 1,100 hours of sick time and 80 hours of vacation time.

{¶ 10} Jones filed a complaint against the Health Department for breach of contract and promissory estoppel. Therein, Jones sought payment of her remaining 2,216.99 hours of vacation time. The Health Department filed an answer

to Jones's complaint and a counterclaim seeking repayment of the 80 hours of vacation time it paid to Jones. Thereafter, Jones filed an answer to the Health Department's counterclaim.

{¶ 11} Both parties filed motions for summary judgment. In addition, both parties filed briefs in opposition to the opposing party's motion for summary judgment. Jones attached her affidavit to her motion for summary judgment. In addition, the depositions of Jones, Kennedy, and Board of Health President Carl Mischka were submitted for the trial court's consideration. Several exhibits, including copies of the personnel policies, were attached to the depositions.

{¶ 12} On November 24, 2009, the trial court granted Jones's motion for summary judgment. The trial court ruled that the Health Department could not retroactively reduce Jones's accrued vacation and sick time. Also, in its judgment entry, the trial court stated:

{¶ 13} "It is more than a little ironic that a health department would expect an employee whose personal physician places her on medical leave, and strongly urges her to retire immediately, would suggest that she should be divested of her benefits because she didn't give the ten-day notice. The ten-day rule should not trump [Jones's] vested rights concerning her vacation and sick time."

{¶ 14} A hearing was held on the issue of damages. Thereafter, on December 22, 2009, the trial court issued another judgment entry, awarding Jones $32,279.37, plus postjudgment interest from November 24, 2009.

{¶ 15} The Health Department has timely filed a notice of appeal from the trial court's December 22, 2009 judgment entry. Upon motion of the Health Department, the trial court issued a stay of its judgment in this matter pending the appeal.

{¶ 16} The Health Department raises the following assignment of error:

{¶ 17} "The trial court erred when it awarded Plaintiff–Appellee payment for her accrued but unused vacation hours contrary to the Defendant–Appellant's written personnel policy."

{¶ 18} In order for a motion for summary judgment to be granted, the moving party must demonstrate:

{¶ 19} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

{¶ 20} Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, * * * show that there is no genuine issue as to any material fact." Civ.R. 56(C). Material facts are those that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 21} If the moving party meets this burden, the nonmoving party must then provide evidence illustrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Civ.R. 56(E) provides:

{¶ 22} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 23} Summary judgment is appropriate pursuant to Civ.R. 56(E) if the nonmoving party does not meet this burden.

{¶ 24} Appellate courts review a trial court's entry of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 119–120, 413 N.E.2d 1187.

{¶ 25} The trial court relied on the Supreme Court of Ohio's opinion in *Ebert v. Stark Cty. Bd. of Mental Retardation* (1980), 63 Ohio St.2d 31, 406 N.E.2d 1098, in support of its decision that the Health Department was not permitted to retroactively reduce Jones's accrued vacation and sick time. The Health Department does not challenge this portion of the trial court's judgment on appeal. Thus, we will not disturb it. In addition, for purposes of this appeal, we will refer to the provisions of the personnel policy in effect prior to the October 8, 2008 revisions.

{¶ 26} The Health Department contends that the trial court erred by finding that Jones was not precluded from receiving a payment for her accrued vacation hours due to her failure to provide ten days' notice of the termination of her employment to the Health Department.

{¶ 27} As the Health Department notes, both parties agree that the Health Department's personnel policy amounted to a contract between the parties. This court has held that employment manuals may constitute binding contracts between an employee and employer provided all necessary elements of an implied contract are present. *White v. Fabiniak*, 11th Dist. No. 2007–L–100, 2008-Ohio-2120, 2008 WL 1932099, at ¶ 17. Moreover, "Ohio courts have enforced company policies regarding payment—or nonpayment—of personal or vacation time upon termination of employment when those policies are clear and published in an employee handbook." *Sexton v. Oak Ridge Treatment Ctr. Acquisition Corp.*, 167 Ohio App.3d 593, 2006-Ohio-3852, 856 N.E.2d 280, at ¶ 13.

{¶ 28} Jones received a lump-sum payment for 1,100 hours of sick time. The personnel policy clearly capped payment for accrued sick time at 1,100 hours. There is no dispute regarding the payment for accrued sick time.

{¶ 29} The personnel policy contained the following language:

{¶ 30} "Personnel leaving the employment of the Health Department are entitled to reimbursement for accumulated, but unused vacation, prorated for length of employment. This vacation pay will be granted as a lump-sum payment."

{¶ 31} In addition, the personnel policy provides:

{¶ 32} "An employee who resigns without giving at least ten (10) calendar days prior written notice prior to his/her last working day with the Health Department shall forfeit any unused vacation leave to his/her credit, or pay in lieu thereof."

{¶ 33} The Health Department contends that Jones did not comply with this provision.

{¶ 34} The trial court appears to have taken a "public policy" position in this matter, holding, "The ten-day rule should not trump [Jones's] vested rights concerning her vacation and sick time." While we ultimately reach the same result as the trial court, under our de novo review we include an additional analysis. We conclude that Jones substantially complied with the ten-day notice provision in the personnel policy.

{¶ 35} The Health Department does not dispute the veracity of Dr. Hunt's medical determination to place Jones on medical leave. Jones was placed on medical leave on October 9, 2008, which was *subsequent* to the last day that she physically worked at the Health Department's office. Accordingly, she was not capable of strictly complying with the 10–day notice provision by returning to the office and actually working.

{¶ 36} The Health Department concedes that Jones was not required to physically work after she was placed on medical leave. In its brief, the Health

Department asserts: "[Jones] was placed on medical leave and could very well have taken ten (10) additional days of sick leave in order to receive payment for all of her accrued but unused vacation hours."

{¶ 37} The Health Department's position is clearly one of form over substance. Presumably, the purpose of the ten-day notice provision was to permit the Health Department to reassign Jones's duties and/or secure a replacement for her. The Health Department's position is that Jones could have taken ten days of sick leave, then retired. In this scenario, the Health Department would have no additional benefit from this form of notice, because Jones would still not physically return to work.

{¶ 38} Moreover, Jones proposed several options to the Health Department. In her initial resignation/retirement letter, Jones states, "[d]ue to medical reasons, I will be going on extended medical leave until my sick time is used and vacation time is also used. I am not asking for payout for my years of service."

{¶ 39} Also, in a letter from Jones's attorney dated October 24, 2008, she informed the Health Department of her desire to settle this matter. The letter provided:

{¶ 40} "[Jones] is willing to attempt resolution with the City to avoid lump sum payment which will place a significant burden on the general fund of the City of Conneaut. In lieu of payment by the City of Conneaut to me of 3,469.29 hours of accrued sick time and accrued vacation leave, [Jones] is willing to discuss with the Board of Health representatives and Finance Director John Williams, an extension of the October 9, 2008 retirement date to allow Mrs. Jones the ability to use all of such sick and vacation time while continuing to be paid and receive benefits."

{¶ 41} Thus, on at least two occasions, Jones informed the Health Department of her proposal to continue as an active employee, on medical leave, until her accrued sick and vacation time was exhausted. Essentially, Jones was proposing a situation in which she would provide over 433 working days' notice of her retirement. It is more than ironic that the situation proposed by Jones was an extended version of exactly the scenario that the board is currently advocating she should have pursued. Due to the various proposals submitted by Jones and their similarity, in substance, to the Health Department's preferred solution, we conclude that Jones substantially complied with the ten-day notice provision.

{¶ 42} In addition, it appears that the Health Department's preferred option for Jones to have taken would have been more costly to the department. Accepting the Health Department's position, it would have been required to pay her for the ten days of sick time (80 hours) for the time between the "notice" and her actual separation date. In addition, the Health Department would have to

pay Jones the remaining balance of her sick time up to 1,100 hours and all of her accrued vacation time. Thus, on its position, the Health Department would have had to pay Jones for an additional 80 hours of sick time.

{¶ 43} There are no genuine issues of material fact, and Jones is entitled to judgment as a matter of law. Thus, the trial court did not err in granting Jones's motion for summary judgment.

{¶ 44} The Health Department's assignment of error is without merit.

{¶ 45} The judgment of the Ashtabula County Court of Common Pleas is affirmed.

Judgment affirmed.

TRAPP, P.J., concurs.

O'TOOLE, J., concurs in judgment only.